## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BURHAN UD DIN,<br><br>Defendant. | **CRIMINAL NO. 17-10098-GAO(s)**<br>VIOLATIONS:<br>18 U.S.C. § 371 (Conspiracy)<br>26 U.S.C. § 7202 (Willful failure to collect and pay over tax) |

### SUPERSEDING INDICTMENT

The Grand Jury alleges that:

### GENERAL ALLEGATIONS

At times material to this Superseding Indictment:

*Certain Relevant Persons and Entities*

1. The defendant, BURHAN UD DIN, was a resident of Massachusetts.

2. Adalat Khan ("A. Khan") was a resident of Massachusetts.

3. Hazrat Khan ("H. Khan") was a resident of New York.

4. Khurshed Iqbal ("Iqbal") was a resident of Massachusetts and A. Khan's uncle.

5. Eman Crown Corp. was a Massachusetts corporation that conducted business as Crown Fried Chicken at a location in Chelsea, Massachusetts ("the Chelsea Store"). The Chelsea Store was a carry-out restaurant that served fried chicken, pizza, and other food items.

6. 1041 Tremont Inc. was a Massachusetts corporation that conducted business as Kennedy Fried Chicken at a location in Boston, Massachusetts ("the Boston Store"). Like the

Chelsea Store, the Boston Store was a carry-out restaurant that served fried chicken, pizza, and other food items.

### *Background Concerning the Chelsea and Boston Stores*

7. H. Khan, Iqbal, and DIN purchased the Chelsea Store in approximately 2008, with DIN purchasing a share of the business.

8. DIN managed the Chelsea Store from its purchase until approximately 2010. In that year, DIN sold his share of the business to H. Khan, Iqbal, and A. Khan, who had begun working in the Chelsea Store in or about December 2009.

9. Although H. Khan and Iqbal retained their ownership interests in and control over the operations of the Chelsea Store from its purchase through the sale of DIN's share and afterward, their ownership interests in the store were not disclosed in various tax returns and publicly filed documents.

10. Articles of incorporation filed with the Massachusetts Secretary of the Commonwealth on or about April 10, 2008, listed H. Khan as the secretary and director of the Boston Store. H. Khan was the majority owner of the store. From in or about 2009 until at least in or about 2013, DIN worked at or managed the Boston Store and received payments from the store's sales.

### *Income and Employment Taxes*

11. The Federal Insurance Contributions Act ("F.I.C.A.") requires employers and employees to pay Social Security and Medicare taxes. An employee is liable for one half of the required taxes and the employer is liable for the other half. Federal law requires employers to withhold the employee share of the F.I.C.A. taxes from their employees' pay, as well as amounts to be credited toward their employees' federal income tax obligations. The employee share of

F.I.C.A. taxes and amounts to be credited toward employees' federal income tax obligations are, together, commonly known as "payroll taxes." Federal law also requires employers to hold in trust and pay over to the IRS their share and their employees' shares of F.I.C.A. taxes, as well as the income taxes withheld from the employees' pay.

12. Federal tax laws require most employers to file with the IRS a Form 941 (Employer's Federal Quarterly Tax Return), which forms are used to report federal employment taxes, including F.I.C.A. taxes and income taxes withheld from employees. When required, employers must file Form 941 four times per year—once per quarter.

13. Federal tax laws require employers to file with the IRS a Form W-2 to report wage information and the amount of taxes withheld from wages paid to each employee.

14. Federal tax laws require corporations and their officers to file a Form 1120 (U.S. Corporation Income Tax Return), which is used to report the income, gains, losses, deductions, and credits of a domestic corporation or other entity for any tax year.

### *Overview of the Tax-Fraud Scheme*

15. From in or about 2008 to at least 2013, to increase profits from the Chelsea and Boston Stores, DIN, working in concert with and at the direction of H. Khan and Iqbal, used a variety of means to avoid paying income and employment taxes owed by the Chelsea Store, the Boston Store, and by H. Khan, A. Khan, Iqbal, DIN, and employees of the Chelsea and Boston Stores.

16. For example, although H. Khan partially owned and had control over the operation of the Chelsea Store, his ownership interest in the store was not disclosed in tax returns or publicly filed documents.

17. DIN, acting in concert with and at the direction of H. Khan and Iqbal, maintained records of actual income and expenses for the Chelsea Store, which records DIN maintained at the Chelsea Store and which later were stored at A. Khan's residence. Similarly, DIN, acting in concert with and at the direction of H. Khan, maintained records of actual income and expenses for the Boston Store, which records DIN maintained at the Boston Store and which later were stored at H. Khan's residence.

18. DIN, acting in concert with and at the direction of H. Khan and Iqbal, provided the tax preparer who prepared Forms 1120 and 941 for the Chelsea Store (hereinafter "the tax preparer") with false information about income and employment costs, and thus caused the preparation of false tax returns for that store. Likewise, DIN, acting in concert with and at the direction of H. Khan, provided the tax preparer with false information about income and employment costs for the Boston Store, and thus caused the preparation of false tax returns for that store as well.

19. Neither DIN, nor H. Khan, nor Iqbal ever provided or showed the tax preparer the records of actual income and expenses of the Chelsea or Boston Stores. Nor did DIN, H. Khan, or Iqbal ever otherwise inform the tax preparer of actual income and expenses of the Chelsea or Boston Stores.

20. DIN, acting in concert with and at the direction of H. Khan and Iqbal, diverted the unreported income from the Chelsea Store to DIN, H. Khan, and Iqbal, and the unreported income from the Boston Store to DIN and H. Khan.

21. DIN, acting in concert with and at the direction of H. Khan and Iqbal, signed and caused to be filed with the IRS on behalf of the Chelsea Store Forms 941 under penalties of perjury that falsely reported the number of employees—some of whom were undocumented

4

workers—wages paid, and payroll taxes owed. DIN, acting in concert with and at the direction of H. Khan and Iqbal, also caused to be filed with the IRS Forms W-2 that falsely reported wages paid to the employees of that store, and, in some instances, DIN, acting in concert with and at the direction of H. Khan and Iqbal, failed to issue Forms W-2 to employees or to file Forms W-2 with the IRS.

22.     Similarly, DIN, acting in concert with and at the direction of H. Khan, signed and caused to be filed IRS Forms 941 under penalties of perjury that falsely reported the number of employees, wages paid, and payroll taxes owed for the Boston Store.

## COUNT ONE
(Conspiracy – 18 U.S.C. § 371)

23. The allegations set forth in paragraphs 1 through 22 of this Superseding Indictment are re-alleged and incorporated herein by reference.

24. Beginning by at least 2008, and continuing until at least in or about 2013, in the District of Massachusetts and elsewhere, the defendant,

**BURHAN UD DIN,**

together with H. Khan, Iqbal, and A. Khan and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed with one another to defraud the United States for the purpose of impeding, impairing, obstructing and defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment and collection of revenue: to wit, employment taxes and corporate income taxes associated with the Chelsea and Boston Stores.

*Manner and Means of the Conspiracy*

25. The manner and means by which DIN, H. Khan, Iqbal, A. Khan, and others sought to accomplish the purpose of the conspiracy included, among other things, the following:

  a. Submitting false information concerning employees, wages, and payroll of the Chelsea and Boston Stores to the tax preparer who prepared IRS Forms 941 for those stores.

  b. Causing false documents to be filed with the Commonwealth of Massachusetts concerning the ownership and control of the Chelsea Store.

  c. Maintaining a secret set of accounting records for the Chelsea and Boston Stores, which records documented unreported costs of goods sold, wages, income, and

      profits and failing to provide those accounting records to the tax preparer who prepared Forms 1120 and 941 for that store.

d. Paying employees in cash "under the table," failing to make the required withholdings of payroll taxes, and failing to issue required Forms W-2.

e. Paying expenses in cash.

f. Employing undocumented workers at the Chelsea and Boston Stores.

g. Signing false tax returns under penalties of perjury.

### *Overt Acts Taken in Furtherance of the Conspiracy*

26.    DIN, H. Khan, Iqbal, and A. Khan undertook the following overt acts, among others, in furtherance of the conspiracy:

a. At various points between approximately 2008 and 2013, DIN maintained or caused to be maintained books and records that accurately documented the revenues and expenses, including wages, of the Chelsea and Boston Stores, but DIN never shared or caused to be shared those books and records with the tax preparer.

b. On various occasions between approximately 2008 and 2013, DIN paid undocumented workers in cash "under the table" and did not have IRS Forms W-2 prepared for them or inform the tax preparer of the wages paid to the workers.

c. On or about April 20, 2009, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending March 31, 2009, on which form he understated the number of employees and significantly understated the total wages for the Boston Store.

    d. On or about July 15, 2009, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending June 30, 2009, on which form he understated the number of employees and significantly understated total wages for the Boston Store.

    e. On or about October 29, 2009, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending September 30, 2009, on which form he understated the number of employees and significantly understated total wages for the Chelsea Store.

    f. On or about October 29, 2009, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending September 30, 2009, on which form he understated the number of employees and significantly understated total wages for the Boston Store.

    g. On or about January 15, 2010, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending December 31, 2009, on which form he understated the number of employees and significantly understated total wages for the Chelsea Store.

    h. On or about April 10, 2010, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending March 31, 2010, on which form he understated the number of employees and significantly understated total wages for the Chelsea Store.

    i. On or about April 10, 2010, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending March 31, 2010, on which form he

understated the number of employees and significantly understated total wages for the Boston Store.

j.  On or about July 15, 2010, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending June 30, 2009, on which form he understated the number of employees and significantly understated total wages for the Chelsea Store.

k.  On or about July 21, 2010, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending June 30, 2010, on which form he understated the number of employees and significantly understated total wages for the Chelsea Store.

l.  On or about July 21, 2010, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending June 30, 2010, on which form he understated the number of employees and significantly understated total wages for the Boston Store.

m.  DIN signed, under penalties of perjury, an IRS Form 941, filed on or about October 31, 2010, for the tax period ending September 30, 2010, on which form he understated the number of employees and significantly understated total wages for the Boston Store.

n.  On or about January 15, 2011, DIN signed, under penalties of perjury, an IRS Form 941 for the tax period ending December 31, 2010, on which form he

understated the number of employees and significantly understated total wages for the Boston Store.

o. On or about January 26, 2012, DIN caused an IRS Form 1040A electronically to be signed under penalties of perjury and filed with the IRS on his behalf for the tax year 2011, on which form DIN did not report any income, including wage income, from the Boston Store even though DIN derived income from that store during that tax year.

p. On or about January 24, 2013, DIN caused an IRS Form 1040A electronically to be signed under penalties of perjury and filed with the IRS on his behalf for the tax year 2012, on which form DIN did not report any income, including wage income, from the Boston Store even though DIN derived income from that store during that tax year.

q. On or about February 18, 2014, DIN caused an IRS Form 1040A electronically to be signed under penalties of perjury and filed with the IRS on his behalf for the tax year 2013, on which form DIN did not report any income, including wage income, from the Boston Store even though DIN derived income from that store during that tax year.

r. In or about March 2013, DIN gave a composition notebook to an employee of the Boston Store and instructed the employee to use the notebook to maintain

      accurate accounting records for the Boston Store, which accounting records, neither DIN, H. Khan, nor the employee ever shared with the tax preparer.

s.  Between approximately one and three times a week during 2013, DIN visited the Boston Store, paid its employees in cash, counted the money on hand at the restaurant, and left with all or some of the week's proceeds.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH SEVEN
(Willful Failure to Collect and Pay Over Tax – 26 U.S.C. § 7202)

27. The allegations set forth in paragraphs 1 through 22 of this Superseding Indictment are re-alleged and incorporated herein by reference.

28. On or about the dates specified below, in the District of Massachusetts and elsewhere, the defendant,

**BURHAN UD DIN,**

did willfully fail to collect and truthfully account for and pay over to the Internal Revenue Service the federal income taxes and Federal Insurance Contributions Act taxes due and owing to the United States of America on taxable wages paid by the entities below, as follows:

| Count | Entity | Quarter Ended | Form 941 Date |
|---|---|---|---|
| 2 | Chelsea Store | March 31, 2010 | April 10, 2010 |
| 3 | Boston Store | March 31, 2010 | April 10, 2010 |
| 4 | Chelsea Store | June 30, 2010 | July 21, 2010 |
| 5 | Boston Store | June 30, 2010 | July 21, 2010 |
| 6 | Boston Store | September 30, 2010 | October 31, 2010 |
| 7 | Boston Store | December 31, 2010 | January 15, 2011 |

All in violation of Title 26, United States Code, Section 7202.

A TRUE BILL.

_____
Foreperson of the Grand Jury

_____
Brian A. Pérez-Daple
Assistant United States Attorney

District of Massachusetts, March 28, 2018.

Returned into the District Court by the Grand Jurors and filed.

_____
Deputy Clerk
HAROLD PUTNAM
3/28/18 @ 1:50 pm

13