## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 17-cr-10098-GAO |
| | ) | |
| BURHAN UD DIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States moves the Court to vary downwards and sentence Defendant Din to one year and a day in prison; three years of supervised release during which Defendant is required to (a) file accurate personal and corporate tax returns for himself and accurate W-2s for his (now-former) employees, (b) settle his civil tax liabilities with the IRS and pay them restitution of $212,224.01, and (c) furnish information to the IRS or any other federal law enforcement entity regarding the tax liabilities of anybody with whom he claims joint and several liability; and pay a mandatory special assessment of $600.

## I.      The Appropriate Guidelines Sentencing Range is 21 to 27 months

In formulating an appropriate sentence to address the defendant's violation of the law, the Court must first turn to the United States Sentencing Guidelines.  The Guidelines "serve as the starting point for the district court's decision and anchor the court's discretion in select-ing an appropriate sentence."  *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1349 (2016). "[S]tarting with the Guidelines' framework helps . . . promote uniformity and fairness." *United States v. Rodriguez*, 630 F.3d 39, 41 (1st Cir. 2010).  In most instances, "the Guidelines are not only the starting point . . . but also the lodestar."  *Molina-Martinez*, 136 S. Ct. at 1346.

The parties' dispute about the sentencing guideline calculations stems essentially from the government's calculation of the tax loss. The spreadsheets submitted by Defendant represent the government's calculation of tax loss. They were done by Internal Revenue Agent Joseph Guidoboni, who testified at trial. Although they are marked "draft," they were marked "draft" in case Defendant submitted anything that suggested that the tax loss should be corrected. Defendant has not, and so the spreadsheets should be treated as final.

Defendant's objections to these calculations — that they are estimates, that they include tax losses from years not included in the indictment, that they include losses from the Jamaica Plain restaurant, and that they include federal income tax withholding — are without merit.

### A. Use of Estimates

It is proper to use estimates to establish tax loss. The calculation of tax loss need not be precise. The tax loss need only be "a reasonable estimate based on the available facts." *United States v. DeLeon,* 704 F.3d 189, 194, 195 (1st Cir. 2013) (quoting USSG § 2T1.1 comment. (n.1)), *cert. denied,* 571 U.S. 942 (2013). Agent Guidoboni's use of averages and estimates to compute payroll tax was approved as reasonable in *DeLeon,* 704 F.3d at 194-95. The use of estimates was necessary here, as the government lacked sufficient records to set forth actual figures for all restaurants during all periods. The estimates may not reflect the restaurants' seasonal earning deviations, but that is the nature of an estimate, and in any event Defendant suggests no specific better way to make the numbers more precise.

### B. *Tax Losses from Years Not Included in the Indictment*

It is proper to include tax losses from years not included in the indictment. The sentencing guidelines take a broad view of what conduct is relevant to a sentence. When a defendant engages in conduct like tax fraud, in which all counts would be grouped together, then the relevant sentencing conduct should include "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purposes, or similar *modus operandi*." USSG § 1B1.3 comment. (n.5(B)(i)). The tax fraud done by Defendant in years outside the indictment period all had a common victim, common accomplices, common purposes, and a similar *modus operandus*, and thus constitute relevant conduct. In fact, the guidelines themselves explicitly recognize that tax frauds in consecutive years generally constitute relevant conduct: "The nature of the offenses may also be a relevant consideration (*e.g.,* a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals)." USSG 1B1.3 comment. (n.5(B)(ii)). Consequently, in tax cases, the courts have routinely included tax losses from years outside the years of conviction. *E.g., United States v. Leonard,* 289 F.3d 984, 987-88 (7th Cir. 2002) (affirming tax loss's inclusion of tax frauds committed on behalf of others in years for which the defendant was not convicted).

The *Leonard* court's words ring true here:

> Leonard argues that after the first ten counts of the indictment were dismissed, all that remained was a one count indictment alleging her own fraudulent claim, "a course of conduct which lasted about one day." While this is true, the guidelines permit the sentencing court to make certain adjustments based

> on offenses outside the four corners of the indictment. The purpose for the "relevant conduct" adjustment in sentencing is to allow the sentence to reflect the seriousness of an offense rather than being limited by the specific charge set out in the indictment.

*Leonard,* 289 F.3d at 988–89. So too should Defendant Din's sentence should reflect the seriousness of his offenses, rather than being limited by the specific charges for which he was convicted.

### C. Tax Losses from the Jamaica Plain Restaurant

It was likewise proper to include tax losses from the Jamaica Plain Restaurant even though those tax losses were not charged in the indictment. Again, the Jamaica Plain Restaurant tax frauds were "part of a common scheme or plan" which were "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purposes, or similar *modus operandi.*" USSG § 1B1.3 comment. (n.5(B)(i)). All the restaurants were owned or part-owned by Defendant, they had the same accountant (Victor), had the same victim (the IRS), common purposes (tax evasion), and similar *modus operandi. E.g., Leonard,* 289 F.3d at 987-89 (7th Cir. 2002) (for defendant convicted of filing one false tax return for herself, affirming inclusion of tax frauds committed on behalf of other people in years for which she was not convicted). Again, as noted in *Leonard,* 289 F.3d at 988–89, the guidelines permit the sentencing court to make adjustments based on offenses outside the four corners of the indictment and the purpose for including relevant conduct in sentencing is to allow the sentence to reflect the seriousness of the Defendant's offense rather than being limited by the indictment's specific charge. Defendant's tax loss should therefore include the Jamaica Plain restaurant frauds.

### D. *Federal Income Tax Withholding*

There is no merit in Defendant's contentions that his tax loss should be calculated by excluding the income taxes he failed to withhold from his employees' wages, calculated as 25% of wages.

To begin with, an employer has an obligation to withhold payroll taxes from its employees' wages. Those payroll taxes include Social Security taxes, Medicare taxes, and the employees' personal income taxes. This statement of the tax law is set forth in PSR ¶¶ 12-15, and Defendant did not object to it. Nor would he have any basis to do so. The obligations to withhold and pay Social Security taxes, Medicare taxes *and* personal income taxes were the subject of testimony by Internal Revenue Agent Guidoboni at trial. They are obvious to anyone who receives a paycheck, a pay stub, or a W-2. And they are established by caselaw and statute. *See, e.g.,* 26 U.S.C. § 3402 (generally obligating employer to deduct and withhold from wages taxes prescribed by the Secretary of the Treasury); *DeLeon*, 704 F.3d at 195 ("As Agent Guidoboni testified at trial, there are three components of a payroll tax: the Social Security portion (taxed at 12.4 percent), the Medicare portion (taxed at 2.9 percent) and the federal income tax withheld . . .").

In the present case, there was testimony and there were documents that established that Defendant Din failed not only to collect the correct amount of Social Security and Medicare taxes, but that he also failed to collect the correct amount of federal income tax. He had an obligation to do so, but didn't. Consequently, the amounts of federal income tax that he didn't collect are properly part of the tax loss. They are not a penalty, but rather an unpaid obligation. Such is demonstrated in, for example, *Varjabedian v. United States*, 339 F. Supp.

2d 140, 152 (D. Mass. 2004) (Dein, M.J.) (reporting calculation of payroll taxes to include Social Security, Medicare, and income taxes).

How to calculate this properly?  The IRS has its *Internal Revenue Manual*.  While Defendant is correct that the IRM does not have the status of mandatory law, the District of Massachusetts has held that it is proper to rely on the IRM in order to calculate payroll taxes, including the very sections that Defendant now objects to.  As Magistrate Judge Dein held, "[w]hether these sections of the IRM are technically mandatory or nor not, an issue on which the court takes no position, it was not inappropriate for Agent Guidoboni to rely on them and apply the 28% rate" that then applied.  *Varjabedian*, 339 F. Supp. 2d at 163.  She explained that relying on the IRM is appropriate because it is intended to be used consistently and thus fairly:

> These provisions are both part of the IRS' "Employment Tax Handbook," which "serves as the foundation for consistent administration of employment taxes by various IRS operating divisions. By providing one source of authority for all operating divisions, the Service greatly reduces inconsistencies regarding philosophies, as well as, procedures." IRM § 4.23.1.1(3). Moreover, "[t]he handbook is designed for use as an everyday reference guide. It serves as the single official compilation of policies, procedures, instructions and guidelines relating to employment taxes." IRM § 4.23.1.2(2). Thus, it is clear that the IRS intended for the Handbook's provisions to be applied uniformly whenever implicated, not merely at the particular agent's discretion. Therefore, Agent Guidoboni's reliance on IRM §§ 4.23.8.4 and 4.23.8.8 was not inappropriate.

*Varjabedian*, 339 F. Supp. 2d at 164, *cited with approval in Hi-Q Personnel, Inc. v. Commissioner of Internal Revenue*, 132 T.C. 279, 300 n.10 (2009)

The above establish that it is proper for Defendant's tax loss to include amounts due to his failure to withhold income tax (as distinct from Social Security and Medicare taxes) from his employees' wages.  They also establish that it is proper to use the *Internal Revenue*

*Manual* as a guide to do so.  What does it say?  *Internal Revenue Manual* § 4.23.8.8 provides that "(1) [Internal Revenue Code] 3402 [that is, 26 U.S.C. § 3402] requires employers to deduct and withhold income tax from payments of wages. When income tax withholding is involved and IRC 3509 [26 U.S.C. § 3509] is not applicable, use the supplemental wage withholding rates. See IRM 4.23.8.4, IRC 3402(d) - Relief for Employer When Employees Have Paid Income Tax on Wages."  This applies here, because income tax withholding and IRC 3509 does not apply.  IRC 3509 does not apply because its subsection (c) [26 U.S.C. § 3509(c)] says that the "section shall not apply to the determination of the employer's liability for tax . . . if such liability is due to the employer's intentional disregard of the requirement to deduct and withhold such tax."  That's what happened here:  Defendant intentionally disregarded the requirement to deduct and withhold federal income tax.  Consequently, because income tax withholding is involved and IRC 3509 doesn't apply, the supplemental wage withholding rates apply, regardless of whether the wages were supplemental or not.  The lowest possible supplemental wage withholding rate is 25%.  Treas. Reg. § 31.3402(g)-1(a)(7).

Likewise *Internal Revenue Manual* § 4.23.8.4(1) states that when "FITW [federal income tax withholding] is involved and IRC 3509 is not applicable, the withholding is either computed under ordinary FITW requirements or using the supplemental withholding rate in Treas. Reg. 31.3402(g)-1.  The rate of 25 percent is effective from 5/28/03 through 12/31/17 . . ."  Again, 25 percent is the correct rate.

### E.  Conclusion

Defendant's sentencing guideline arguments, addressed above, are without merit.  His remaining sentencing guideline arguments, such as that the government has not proved that the restaurant workers were employees rather than independent contractors, are fanciful.  His

reliance upon a two-year-old plea agreement that was never filed is beside the point:  the government's estimates of loss change, the more time it has to examine a case.

The tax loss is properly estimate as $212,224.01, and therefore under USSG § 2T1.6 and the tax table in USSG § 2T4.1, the offense level is 16.  This estimated tax loss is comfortably within the corresponding band in USSG § 2T4.1's tax table:  more than $100,000 but less than $250,001.  For Defendant's sentencing guidelines arguments to have any effect on the guideline sentencing range, they would have undercut the estimate by more than 50%.  He has not shown a good reason for a 50% cut in losses.

With Criminal History Category I, the guideline sentencing range is 21 to 27 months.

## II.   Although a Downward Variance is Appropriate in this Case, Defendant Should Still Face Imprisonment

Once the sentencing court has established the Guidelines Sentencing Range (including a consideration of any applicable departures), it must then evaluate the sentencing factors set out in 18 U.S.C. § 3553(a).  *United States v. Dixon*, 449 F.3d 194, 204 (1st Cir. 2006).  The goal is to fashion "a sentence sufficient, but not greater than necessary," for the achievement of the legitimate objectives of sentencing. 18 U.S.C. § 3553(a); *Dixon*, 449 F.3d at 204.  Those purposes are "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). In determining that sentence, this Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the kinds of sentences available,"

8

§ 3553(a)(3), the Guidelines and Guideline range, § 3553(a)(4), the Guidelines' policy state-ments, § 3553(a)(5), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), and "the need to provide restitution to any victims of the offense," § 3553(a)(7).

A sentencing court may not "presume that a sentence within the applicable Guidelines range is reasonable," but must consider the § 3553(a) factors. *Nelson v. United States*, 555 U.S. 350, 352 (2009). Nonetheless the Guidelines and the post-*Booker* sentencing regime sensibly "steer district courts to more within-Guidelines sentences." *Peugh v. United States*, 569 U.S. 530, 531 (2013). That is because "[t]he post-*Booker* federal sentencing scheme[] . . . aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." *Id.* at 531.

Here, a year-and-a-day sentence appropriately considers the nature and circumstances of the offense; reflects the seriousness of the offense, promotes respect for the law, and pro-vides just punishment for the offense; protects the public from further crimes by the defendant; affords adequate deterrence; is consistent with the Sentencing Commission's policy state-ments on the need for deterrence in tax crimes; and is no greater than necessary for these purposes.   18 U.S.C. § 3553(a)(1), (2), (5), (6).   Specifically, this Court should impose the government's recommended sentence for the following reasons:

### A. *Nature, Circumstances, and Seriousness of the Offenses*

Defendant's crime is significant.   Defendant took deliberate and willful steps to de-fraud the United States and to profit from that conduct.   The tax loss suffered by the United States and the taxpayers as a result of the defendant's conduct spanned five years.   During trial, Defendant tried to suggest that he was just a pawn of his business partners and subject

to a scheme of their making.  But Defendant Din put the lie to that himself when he opened his own restaurant in Jamaica Plain and continued the tax fraud scheme all on his own.

**B.**  *Need to Promote Respect for the Law and Just Punishment*

The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system, which depends upon a system of voluntary compliance. Our country's income tax laws, in effect, reflect an honor system under which citizens are required to cooperate with the government, to file true and accurate returns.  Therefore, it is vital that when a citizen is non-compliant, that citizen is appropriately punished.  As the U.S. Sentencing Guidelines Manual § 2T1.1 introductory commentary aptly states, "[c]riminal tax prosecutions serve to punish the violator and promote respect for the tax laws."  *See also United States v. Zukerman,* 897 F.3d 423, 428 (2d Cir. 2018) (explaining that "tax crimes represent an especially damaging category of criminal offenses, which strike at the foundation of functioning government") (citations and internal quotation marks omitted).

Failure to sentence Defendant to a term of incarceration in this case would send the wrong message: "that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty."  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).  And, although imposing a sentence which prioritizes restitution might be "desirable, [] so is the deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white- and blue-collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail."  *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006); *United States v. Ture*, 450 F.3d 352, 359 (8th Cir. 2006) (deciding that imposing a term of imprisonment based on the fact that defendant "owes a substantial amount of back taxes, interest, and penalties . . . is entirely improper

and . . . results in bad public policy"); *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) ("Business criminals are not to be treated more leniently than members of the 'criminal class' just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity."). Accordingly, a term of incarceration is required to promote respect for the law and, as more fully described below, provide just punishment for Defendant Din's crimes.

### C. *Need to Afford Adequate Deterrence*

The Sentencing Guidelines clearly articulate that deterrence should be the primary consideration when sentencing defendants for tax crimes. The reasoning is compelling. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from disobeying the tax laws is of the utmost importance when punishing criminal tax violations. U.S.S.G. § 2T1, introductory cmt. (2016).

General deterrence is the essential means of minimizing the ever-increasing amount of money estimated to be lost each year through tax fraud. The IRS's most recent study of tax compliance estimates that only 81.7% of individuals are compliant, leaving a yearly tax gap of over $458 billion dollars in unreported and uncollected taxes. *See Federal Tax Compliance Research: Tax Gap Estimates for Tax Years 2008-2010* at 2, 8, Internal Revenue Service Publication 1415 (April 2016), *available at* https://www.irs.gov/pub/irs-soi/p1415.pdf. Widespread noncompliance with the Internal Revenue Code is an ongoing problem that merits every court's consideration when sentencing defendants for committing tax offenses. Meaningful sentences – that is, ones that, through their terms, speak loudly – must be given so that others are forewarned of the consequences.

Absent such deterrence, other successful Americans with the means and opportunity to enrich themselves at the cost of other taxpayers, will cynically conclude that the potential rewards of such criminal activity outweigh the risks of being caught and punished for committing tax fraud. *See Ture*, 450 F.3d at 358 ("The goal of deterrence rings hollow if a prison sentence is not imposed . . . ."). The sentence imposed in this case should send a strong message to other would-be tax cheats that imprisonment is a reality for those who willfully violate the internal revenue laws. The sentence should also assure law-abiding taxpayers that they are not foolish for filing tax returns and paying their share of taxes. In short, our nation's tax system depends of the voluntary compliance of honest taxpayers. Here, a sentence of imprisonment promotes voluntary compliance by making clear that there are consequences for hiding income from the government and will certainly deter others by sending a message that cheating on your taxes bears very serious consequences.

Accordingly, the government simply cannot ensure compliance with the Internal Revenue Code if the general public believes there are no meaningful repercussions for failing to comply with the tax laws. Sentencing defendant to a term of incarceration will convey the message to others that systematic and repeated efforts to cheat on one's taxes will be met with harsh punishment.

**D.** ***Need to Avoid Unwarranted Sentence Disparities Among Defendants Guilty of Similar Conduct***

The Sentencing Guidelines reflect the consensus that those convicted of economic crimes should not be able to avoid incarceration, even where such crimes constitute a defendant's first offense. The legislative history of the Sentencing Reform Act of 1984, which created

the United States Sentencing Commission, made clear that one of the Act's goals was to rectify the serious problem in the criminal justice system that white-collar offenders were not being adequately punished.

The Guideline range reflects the seriousness of the offense, promotes respect for law, and provides for just punishment in this case. Anchoring the sentence to the Guideline range also serves the vital goal of uniformity and fairness in sentencing. To be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Nevertheless, it remains the case that "the [Sentencing] Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted). Thus, "in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.* at 109 (internal quotation marks omitted).

Furthermore, the Guidelines are often the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in creating the Sentencing Commission in the first place. Reference to the Guidelines, while carefully considering the Section 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing sentencing determinations from varying based on the luck of the judicial draw.

E. *History and Characteristics of the Defendant*

Were it not because of the unique history and characteristics of Defendant Din, particularly his family situation, the United States would recommend a sentence at the high end of the guideline sentencing range.  He did not just go to trial: he went to trial denying the authenticity of almost every document available, including those authenticated by a certificate by the Commonwealth's Secretary of State.  Nevertheless, because of Defendant Din's family situation, the United States requests a variance down to a year and a day.  It does not request a variance all the way down to probation, however.  As noted above, imprisonment for tax frauds is still necessary for just punishment, equal punishment, and general deterrence.

Respectfully submitted,

ANDREW LELLING
United States Attorney

By:    */s/ Scott L. Garland*
Scott Garland
Assistant U.S. Attorney

Dated: November 6, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed through the ECF system and therefore will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: November 6, 2019                    _/s/ Scott L. Garland_
                                           Assistant United States Attorney